Joshua E. Levine (Bar Number 513179)
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center
New York, New York 10281
Tel: (212) 336-0122
Fax: (212) 336-1317
E-mail: levineje@sec.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                  Plaintiff,<br><br>                   v.<br><br>MICHAEL J. LAWLER,<br><br>                                  Defendant. | 05 Civ. ____ (___)<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against defendant Michael J. Lawler ("Lawler" or "Defendant"):

## SUMMARY

1.  From approximately 1997 through at least July 2002, Lawler orchestrated and carried out a scheme to fraudulently manipulate the books and records of The Penn Traffic Co., Inc. ("Penn Traffic"), a publicly traded, New York-based supermarket chain and wholesale food distributor. As the highest-ranking employee at Penny Curtiss, Penn Traffic's bakery manufacturing subsidiary, Lawler made and directed his employees to make improper accounting adjustments to Penny Curtiss' books and records so that Penny Curtiss would both continue to

operate and meet or come close to meeting sales targets set forth by management. In the most significant of the fraudulent adjustments, Lawler made and directed his subordinates to make phony entries in Penny Curtiss' general ledger that overstated the amount of inventory, thus reducing the costs of goods sold. Lawler's fraudulent entries had the effect of overstating Penn Traffic's Earnings Before Income, Taxes, Depreciation, and Amortization ("EBITDA"), as well as its net income. As a result of Lawler's willful misconduct, Penn Traffic misstated more than $11 million of income and issued restated financial results for a several year period.

## NATURE OF THE PROCEEDINGS AND THE RELIEF SOUGHT

2. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(b), and Section 21(d)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(d)(1), and seeks to permanently enjoin and restrain Lawler from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Sections 10(b) and 13(b)(5) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78m(b)(5), and Rules 10b-5 and 13b2-1 thereunder, 17 C.F.R. §§ 240.13b2-1 and 240.10b-5, and, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), from aiding and abetting violations of Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and 78m(b)(2), and Rules 12b-20, 13a-1 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13.

## STATUTES AND RULES ALLEGED TO HAVE BEEN VIOLATED

### Antifraud Provisions

3. The Defendant has engaged, and, unless enjoined and restrained, will again engage in transactions, acts, practices, and courses of business that constitute violations of

Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### Books and Records and Internal Controls Requirements

4.     The Defendant has engaged, and, unless enjoined and restrained, will again engage in transactions, acts, practices and courses of business that constitute violations of Section 13(b)(5) of the Exchange Act, 15 U.S.C. §78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. §240.13b2-1 and, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), has aided and abetted violations of Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and 78m(b)(2), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d) and 78aa.

6.     Venue lies in this Court pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of these transactions, acts, practices, and courses of business alleged herein occurred in the Northern District of New York. For example, Lawler made and directed others to make phony journal entries on Penny Curtiss' general ledger in the Northern District of New York.

7.     Defendant, directly or indirectly, has made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and/or the mails, in connection with the acts, practices, and courses of business alleged herein.

## THE DEFENDANT

8.   **Lawler**, 54, resides in Solvay, New York. Lawler joined Penny Curtiss as an Administrative Manager and became its Director of Manufacturing in August 1998. He was terminated on July 31, 2002, as a result of the accounting improprieties described herein.

## RELEVANT ENTITIES

9.   **Penn Traffic**, a Delaware corporation with headquarters in Syracuse, New York, engages in the operation of supermarkets, as well as wholesale food distribution businesses, under various trade names in upstate New York, West Virginia, Pennsylvania, Vermont, and New Hampshire. Prior to approximately May 2003, Penn Traffic's common stock was traded on NASDAQ's National Market and from approximately June 1, 2003 until April 13, 2005, Penn Traffic's stock was traded on the NASDAQ Pink Sheets as PNTFQ. On May 30, 2003, Penn Traffic filed for Chapter 11 bankruptcy protection for the second time in approximately four years. Penn Traffic emerged from bankruptcy on April 13, 2005 at which time its existing common stock, which was registered with the Commission pursuant to Section 12(g) of the Exchange Act, was canceled.

10.  **Penny Curtiss**, a wholly-owned subsidiary of Penn Traffic, manufactures baked goods at a plant in Syracuse, New York, for sale at Penn Traffic supermarkets and other stores.

## THE FINANCIAL FRAUD AT PENNY CURTISS

### Lawler's Falsification of Penny Curtiss' Books and Records

11.  As the Director of Manufacturing, Lawler was personally responsible for all facets of Penny Curtiss' performance, including preparation of its inventory counts and its books and records. Lawler also generated the Penny Curtiss flash report, a document that compared the

4

actual sales and profit of Penny Curtiss to the internal Penn Traffic forecast generated at the beginning of the fiscal year, and provided this information to Penn Traffic management.

12. From approximately 1997 until approximately July 2002, Lawler engaged in a variety of fraudulent accounting practices. First, Lawler knowingly and systematically overstated inventory at Penny Curtiss by personally making, and by directing others to make, phony journal entries on Penny Curtiss' general ledger. Lawler made many of these entries from his own computer terminal and never provided the Penn Traffic corporate accounting department with the appropriate documentation to support these entries. Lawler determined the amount of the improper entry based solely on the end-of-the-month sales figure that he was supposed to reach. Lawler knew that overstating inventory would have the effect of understating cost of goods sold, which would result in overstated EBITDA and net income for Penny Curtiss and its parent, Penn Traffic.

13. Lawler also purposefully manipulated other areas of the Penny Curtiss' accounting records. Specifically, Lawler: (a) improperly stopped accruing three different expenses by making manual adjustments to Penny Curtiss' general ledger; (b) pre-booked a variety of sales, made to both Penn Traffic and outside vendors, prior to engaging in all activities necessary to finalize these sales; and (c) booked two machines as maintenance and inventory expenses when each should have been booked as a capital expenditure and depreciated. Lawler knew that his actions were improper and knew that these inaccurate accounting treatments would make Penny Curtiss look more profitable than, in fact, it was.

**Penn Traffic's Restatement Disclosure**

14. On August 8, 2002, Penn Traffic issued a press release announcing that it would

restate its financial results due to Lawler's false accounting entries at Penny Curtiss. Later, on September 18, 2002, Penn Traffic provided the specifics of the restatement: (a) its net income for the 13-week period ended May 4, 2002, the fiscal years ended February 2, 2002 and February 3, 2001, and the 31-week period ended January 29, 2000 were reduced by $0.7 million, or $0.04 per diluted share, $3.0 million or $0.15 per diluted share, $2.4 million or $0.12 per diluted share, and $1.1 million or $0.05 per diluted share, respectively, for a cumulative after-tax effect of $7.2 million; and (b) its EBITDA for the 13-week period ended May 4, 2002, the fiscal years ended February 2, 2002 and February 3, 2001, the 31-week period ended January 29, 2000, and the 21-week period ended June 26, 1999 were reduced by $1.2 million, $4.2 million, $3.2 million, $1.3 million, and $1.1 million, respectively, for a total of $11 million.

## FIRST CLAIM FOR RELIEF

### Violation of Section 17(a) Of the Securities Act and Section 10(b) Of the Exchange Act and Rule 10b-5

15. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 14.

16. Lawler, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or by the use of the mails, or of the facilities of a national securities exchange, in the offer or sale and in connection with the purchase or sale of Penn Traffic securities, knowingly or recklessly, has: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact, or has omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, transactions, practices

and courses of business which operated or would have operated as a fraud or deceit upon purchasers of Penn Traffic securities and upon other persons.

17.     As part and in furtherance of the violative conduct, Lawler engaged in a fraudulent scheme to inflate Penn Traffic's reported financial results by, among other things, personally making, and directing others to make, phony journal entries on Penny Curtiss' general ledger that overstated inventory.

18.     As part and in furtherance of the violative conduct, Lawler improperly stopped accruing three different expenses by making manual adjustments to Penny Curtiss' general ledger, pre-booked a variety of sales, made to both Penn Traffic and outside vendors, prior to engaging in all activities necessary to finalize these sales, and booked two machines as maintenance and inventory expenses when each should have been booked as a capital expenditure and depreciated.

19.     Lawler knew, or was reckless in not knowing, that because of his fraudulent conduct and the fraudulent conduct of others, more fully described above, Penn Traffic's periodic and annual reports described above were materially false and misleading.

20.     By reason of the foregoing, Lawler directly or indirectly, singly or in concert, has violated, and unless enjoined and restrained will again violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

### Violations of Section 13(b)(5) of
### the Exchange Act and Rule 13b2-1

21. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 20.

22. Lawler engaged in fraudulent practices in the course of which he knowingly circumvented or knowingly failed to implement a system of internal accounting controls and knowingly falsified, directly or indirectly, or caused to be falsified, books, records and accounts of Penn Traffic that were subject to Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

23. As part and in furtherance of this violative conduct, as alleged above, Lawler knowingly falsified and caused others to falsify the books, records, and accounts of Penny Curtiss and its parent, Penn Traffic. In doing so, he also knowingly circumvented the internal accounting controls at Penn Traffic. Specifically, Lawler made, and directed others to make, false and fictitious entries on Penn Traffic's general ledger that caused Penny Curtiss to understate cost of goods sold, directly resulting in overstated EBITDA and net income for Penny Curtiss and its parent, Penn Traffic.

24. By reason of the foregoing, Lawler, singly or in concert, directly or indirectly, has violated, and unless enjoined and restrained will again violate, Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

## THIRD CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13

25. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 24.

26. Penn Traffic failed to file with the Commission, in accordance with the rules and regulations prescribed by the Commission, such annual and quarterly reports as the Commission has prescribed and Penn Traffic failed to include, in addition to the information expressly required to be stated in such reports, such further material information as was necessary to make the statements made therein, in light of the circumstances in which they are made, not misleading, in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1 and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13.

27. As part and in furtherance of this violative conduct, as alleged above, Penn Traffic's revenues and earnings were overstated in the financial statements contained in the annual reports filed by Penn Traffic for the fiscal years ended February 2, 2002 and February 3, 2001, and in certain quarterly reports during 2000 and 1999.

28. Lawler, knowingly or recklessly, directly, or indirectly, singly or in concert, engaged in fraudulent practices resulting in overstatements of Penn Traffic's net income on its books and records and in financial statements included in the annual and periodic reports identified above.

29. By reason of the foregoing, Lawler, singly or in concert, directly or indirectly, aided and abetted Penn Traffic's violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1,

240.13a-13, and, unless enjoined and restrained, Lawler will again aid and abet violations of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13.

## FOURTH CLAIM FOR RELIEF

### Violations of Section 13(b)(2) of the Exchange Act

30.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 29.

31.     Penn Traffic failed to: (a) make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets; and (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions were executed in accordance with management's general or specific authorization; (ii) transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets was permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences, in violation of Section 13(b)(2) of the Exchange Act, 15 U.S.C § 78m(b)(2).

32.     As part and in furtherance of this violative conduct, as alleged above, Penn Traffic recorded approximately $11 million of overstated net income on its books and records, and Penn Traffic's internal accounting controls were insufficient to reasonably assure that its annual and periodic financial statements were prepared in conformity with GAAP.

33. Lawler, knowingly or recklessly, directly or indirectly, singly or in concert, engaged in the fraudulent practices resulting in overstatements of Penn Traffic's net income on its books and records and in financial statements included in the annual and periodic reports identified above.

34. By reason of the foregoing, Lawler, singly or in concert, directly or indirectly, aided and abetted Penn Traffic's violations of Section 13(b)(2) of the Exchange Act, 15 U.S.C. § 78m(b)(2), and unless enjoined and restrained, Lawler will again aid and abet violations of Section 13(b)(2) of the Exchange Act, 15 U.S.C. § 78m(b)(2).

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court issue a final judgment:

### I.

Permanently enjoining Lawler, his agents, servants, employees, and attorneys, and all persons in active concert or participation with him, who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Sections 10(b) and 13(b)(5) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78m(b)(5), and Rules 10b-5 and 13b2-1 thereunder, 17 C.F.R. §§ 240.13b2-1 and 240.10b-5.

### II.

Permanently enjoining Lawler, his agents, servants, employees, and attorneys, and all persons in active concert or participation with them, who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting violations of Sections 13(a) and 13(b)(2) of the Exchange Act, 15 U.S.C. §§ 78m(a) and 78m(b)(2), and Rules

12b-20, Rule 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

### III.

Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 28, 2005

                                       Joshua E. Levine, Esq. (Bar Number: 513179)
                                       Attorney for Plaintiff
                                       SECURITIES AND EXCHANGE COMMISSION
                                       Northeast Regional Office
                                       3 World Financial Center
                                       New York, New York 10281
                                       Tel: (212) 336-0122
                                       Fax: (212) 336-1317
                                       E-mail: levineje@sec.gov

Of Counsel:

Mark K. Schonfeld
David Rosenfeld
David A. Markowitz
Alan Reifenberg